ONO TRADING CO. *v.* UNITED STATES (No. 3869)[1]

[1] T. D. 47991.

United States Court of Customs and Patent Appeals, November 4, 1935

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 8, 1935, by Mr. Folks; submitted on brief by appellant]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

On June 2 and June 21, 1926, respectively, the appellant imported certain silk goods from Japan, the entries thereof being numbered, respectively, 5972 and 6099. At the time of entry, there was attached to the entry papers, in each case, a typewritten slip purporting to comply with the provisions of section 489, Tariff Act of 1922. The slip in entry No. 5972 is illustrative, and is as follows:

CERTIFICATE OF PENDING REAPPRAISEMENT ON JAPANESE TAX ISSUE

It is certified that the entered value of the merchandise mentioned below is higher than the value as defined in the tariff act of 1922, and that the goods are so entered in order to meet advances by the appraiser in similar cases now pending on appeal for reappraisement. The similar cases now pending are entries 765862, 861443 and others, at the port of New York.

It is contended that the duty should be assessed on the basis of a value exclusive of the terms specified; in other words, that the Japanese textile tax is not a part of dutiable value.

Textile tax                              Ono Trading Co.,
Yen 2285.86                                          *Importer.*
                                         A. Sciaroni,
                                            *Attorney in Fact.*

It is conceded that there were no such numbered similar cases pending on reappraisement. These entries came under the observation of the appraiser and he returned his appraisements to the collector on June 8 and August 14, 1926, respectively. Being dissatisfied with the appraisement, the importer appealed in each case for reappraisement.

On October 6, 1932, the reappraisement appeals having been submitted to Presiding Judge Tilson, judgment was entered sustaining the claim of the importer, the decision stating in part:

Accepting this stipulation as a statement of fact, I find the proper dutiable values of the silk piece goods, * * * and silk handkerchiefs, covered by said appeals, whether the entries are so-called duress entries, or otherwise, to be the values found by the appraiser, less any additions made by the appraiser, the importer, or both, to cover the so-called Japanese consumption tax.

The judgment order also recited that the value found was the "proper dutiable values of the silk piece goods." Endorsed upon the so-called duress certificates, in each case, is a notation by the deputy collector: "No allowance. Wrong entry numbers. See Bureau letter Jan. 9/33."

At some time after the entries were filed, Mr. Tuttle, of the law firm of Lawrence and Baldwin, the exact date not appearing from the record, on investigation learned that the two entries referred to in the duress certificate did not give the numbers of the New York cases which were the test cases in which the issue of the Japanese textile tax, here involved, was being litigated, and which should have been cited as the test cases. Thereupon, he prepared and tendered to the collector a desired amendment of the duress certificate in said entry No. 6099. This was tendered to and rejected by the collector on October 2, 1933. A similar tender and rejection appears in the record as to entry No. 5972. The proposed amendment in No. 6099 is as follows:

Certificate of pending reappraisement on file with our above specified entry is hereby amended by referring you to New York entries 754262 and 768869 of October 1922, these entries having been pending on appeal in reappraisements numbers 11535–A and 11448–A, at the time this San Francisco entry was filed.

No. 6099 was liquidated by the collector on March 21, 1933, and No. 5972 on September 12, 1933. The importer then applied to the collector for reliquidation of the entries at the appraised values. The collector refused, and protests were filed. On trial of the protests before the United States Customs Court, the issues were consolidated, and, after hearing, the protests were overruled, largely upon the claimed authority of *M. Bernstein* v. *United States*, 18 C. C. P. A. (Customs) 193, T. D. 44379. The importer now brings the consolidated issues to this court for review.

The appellant makes several contentions here. It is first claimed that duty should have been assessed on the basis of the "dutiable"

value, as fixed by Presiding Judge Tilson in his decision in reappraisement. It is also claimed that the collector should have permitted the amendment of the certificates of duress; that he had no discretion to deny the same; that reliquidation should have been made on the basis of amended certificates and that the trial court erred in not so holding.

Incidental to these claims, it is urged that the statute of jeofails, U. S. Code, title 28, section 777, applies to the amendment of the certificates, and that it should have been so held. On the other hand, the Government contends that the case was properly decided under the authority of *M. Bernstein* v. *United States, supra;* that there is no provision of law permitting amendments of a duress certificate; that the statute of jeofails does not apply to such a certificate for the reason that such certificate is not a pleading. It is also contended that, in any event, the entry might not be amended after the imported goods had come under the appraiser's observation, as they had in this case, and that the importer lacked diligence and was guilty of laches in not offering its amendment at an earlier date.

*M. Bernstein* v. *United States, supra,* involved an entry of goods under the Tariff Act of 1922. Upon entry, a so-called "duress" certificate was filed by the importer, under section 489 of said act. The material portion of said section was as follows:

SEC. 489. ADDITIONAL DUTIES.—If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise * * *.

At the time of this importation, article 268 of the Customs Regulations of 1923 was in effect, which regulation provided a form of certificate in duress entries, and, among other things, required the giving of the entry numbers in what were claimed to be test cases. The same regulation was in force at the time of the importations here in issue.

The importer in the *Bernstein* case made an entry and attached thereto a certificate of duress, but gave as the number of his test case a case which was not a test case. There were, however, test cases then pending but not named in the certificate. The entry was liquidated by the collector at the entered value. Protest was filed by the importer, claiming that the entry should have been liquidated on the basis of the final appraised value in "similar cases now pending on appeal for reappraisement." In other words, the importer claims that if there were such "similar cases", pending when importer's entry was filed, importer's entry should have been liquidated on the basis of final reappraisement in such similar cases, whether such cases were specifically mentioned in importer's certificate or not.

This court thought otherwise, and was of opinion that the number or numbers of a test case or test cases must be set forth in the certificate, as required by said customs regulation, article 268, and that said regulation was valid. In deciding the case, we said:

It is apparent that there is no requirement in express words that any pending case shall be specified in the certificate, but we think that such requirement is clearly implied from the language used. Good faith after due diligence and inquiry are required upon the part of the importer as a condition precedent to his receiving the benefit of the section. Under appellant's theory that no similar cases then pending on appeal need be specified it would be almost impossible to administer the section. In our view, Congress could not have intended that a certificate not specifying any similar case pending on appeal for reappraisement would be sufficient. Congress could not have intended to throw the tremendous burden upon collectors of searching the records of the multitude of cases in the United States Customs Court, pending on appeal for reappraisement, to determine if any of them were "similar" to the case in which a "duress" entry is made. There are approximately 50 collection districts in the United States from which appeals to reappraisement are taken. While a collector could, perhaps, easily ascertain what appeals were pending from his own district, and whether any such case on appeal was similar to the case in which the "duress" entry was made, it would be a colossal task for him to make such determination for the entire United States. On the other hand, the importer must know, at the time of his entry, of cases which are similar to his own, in order to secure the benefits of section 489. This knowledge is clearly required by the section, and we hold that the similar case or cases upon which he relies must be specified in the certificate filed by him. Certainly, this construction of the statute involves no hardship upon the importer. Under appellant's theory, while an importer must know at the time of his "duress" entry of specific cases pending on appeal for reappraisement which are similar to his own, he is entitled to the benefits of the section without disclosing that knowledge in his certificate. It is easily seen that such a construction would make it easy to perpetrate frauds upon the Government. An unscrupulous importer might make a "duress" entry without any information whatever as to any similar pending cases, but hoping that there might be some such, knowing that the collector would be compelled to ascertain the fact of whether there were any such. If similar cases were found by the collector, it would be easy for the importer to say that he had knowledge of the same at the time he made his entry, and it would be difficult for the Government to controvert his statement. Under the construction we give the section this could not occur. The importer must have information concerning a specific

case which is similar to his own, pending on appeal to reappraisement, and must specify the case or cases in his certificate, and we are convinced that this was the intention of Congress in using the language we are considering in section 489. We feel clear that this is the proper construction, but even were it doubtful we should come to the same conclusion.

It is pointed out that in deciding the *Bernstein* case, this court said in its opinion:

Appellant at no time endeavored to amend his "duress" certificate by naming a correct "similar case then pending on appeal for reappraisement."

\*       \*       \*       \*       \*       \*       \*

In the case at bar no effort was made by appellant to amend the certificate here in question.

This is construed by appellant as a holding by this court that such a certificate is amendable. No such holding was within the mind of the court, nor was that issue either made or considered in the case. The above-quoted expressions were, rather, intended as a part of the history of the case. In the case at bar, the question of the amendability of said certificate is, for the first time, raised in this court.

It is argued here that such amendment is clearly authorized by the judicial code, U. S. Code, title 28, section 777, which section is as follows:

Defects of form; amendments. No summons, writ, declaration, return, process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof; and such court shall amend every such defect and want of form other than those which the party demurring so expresses; and may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe.

Said section has no reference to proceedings before administrative officials, but includes only proceedings before a court. The complaint here is that the trial court erred in not finding the collector was in error in not permitting such amendment. We go, then, to a consideration of whether it was mandatory upon the collector to permit such amendment.

In the beginning, counsel have cited no statutory provisions giving the collector power to permit such amendment.

Section 520 of said tariff act permits the Secretary of the Treasury to correct errors in liquidation in certain cases, one being:

(3) Whenever a manifest clerical error is discovered in any entry or liquidation within one year after the date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry;   \*   \*   \*

This application to amend, however, was made to the collector, not to the Secretary.

Section 487 of said act permits amendment by the "consignee, or his agent", to make such "additions in the entry to or such deductions from the cost or value given in the invoice as in his opinion may raise or lower the same to the value of such merchandise", at any time before the invoice or the merchandise has come under the observation of the appraiser for the purpose of appraisement. Such amendments, however, are not made by leave of the collector, but as a matter of right, under the statute. .

Hence it cannot be said that a mandatory duty was imposed by statute upon the collector to permit appellant's amendments to be made. In fact, we have found no authority given to him by statute to permit the same, unless it be under authority of section 514 of said act, which section permits the collector to reliquidate—

any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry.

After liquidation and before protest, counsel for appellant orally requested the collector to reliquidate the entry on the ground of clerical error in the certificate. Nothing regarding such claim is stated in the written amendment. Evidently the collector was satisfied that there was no such clerical error. There is no testimony in the record to show that there was any such error. All that appears is that the representatives of the importer, in making entry, had general information that there was a pending test case, or pending test cases. However, no attempt was made to identify particularly such cases or their numbers after the final decision by this court in *United States* v. *Iwai & Co.*, 16 Ct. Cust. Appls. 542, T. D. 43265. Thereafter counsel for the importer here ascertained the correct numbers and tendered a new certificate as an amendment, with the correct numbers inserted. This did not constitute a clerical error, but was simply a failure on the part of the agents of the importer to do what the law required, namely, to refer to and cite "similar cases then pending on appeal", provided for by said section 489. There is a clear line of demarcation between clerical error and an error of law or fact. See *Basser's Silk Co.* v. *United States*, 23 C. C. P. A. (Customs) 141, T. D. 48008, decided concurrently herewith.

Furthermore, it may be accepted as the law that, under said section 489, unless a certificate be filed with the entry, identifying a certain test case, or test cases, no relief can be had thereunder. Under the reasoning of the *M. Bernstein* case, *supra*, the certificate filed herein was not such a certificate, and hence the matter stands as if no certificate at all had been filed with the entry. The law (section 489) requires the certificate to be filed "*at the time of entry*" (italics not quoted). It does not permit the filing of such certificate at some other time. Hence, if there were no certificate filed at the time of

entry, as we have in effect found, where, within the law, is there authority to file it at some other time, as, for example, in the case at bar, when it was attempted to be done almost seven years after entry of the goods, and long after the merchandise had come under the observation of the appraiser for purposes of appraisement?

It is strenuously contended that the collector should have liquidated the entries on the basis of the judgment of Presiding Judge Tilson, when sitting in reappraisement. Stress is placed upon the finding of the presiding judge that the "proper dutiable values" of the merchandise were as claimed by the importer, and did not include the Japanese tax. It is contended that the dutiable value was then fixed and that the collector must follow it.

Judge Tilson followed the statute in finding value as provided by section 503 of the Tariff Act of 1922, but it is clear that his judgment did not relieve the collector from performing the duty incumbent upon him under said section 489. Said section 489 provides that "duties shall not be assessed upon an amount less than the entered value", unless the required certificate shall be filed at the time of entry, and the importer's contentions shall be sustained in similar test cases. Not having filed such certificate, the decision of the single judge in reappraisement in this case becomes immaterial, so long as the entered value is greater than the final appraised value in the case.

Other points are urged, but, in view of our conclusion as above stated, further discussion is thought to be unnecessary.

The judgment of the United States Customs Court is *affirmed*.